Good morning, your honors, and may it please the court. My name is David Biederman of the Emory University School of Law at Atlanta, Georgia. Joining me at council table is Mark Kasabian of the Garagos Law Firm from here in Los Angeles. Judah Prada of New York City was also on the brief. The appellants, Dr. and Mrs. Tatoyan, have three main submissions this morning. The first is that the district court erred and improperly instructed the jury as to the elements of the bulk cash smuggling offense codified at 31 U.S.C. 5332A, raising in this appeal an issue of first impression in the federal courts of appeals. Secondly, that the district court abused its discretion in refusing to allow the Tatoyans to present evidence as to the legitimate sources and benign purposes of the funds that they were taking out of the country, evidence from which a reasonable jury might have concluded that the Tatoyans had no motive to violate the currency laws, thus negating the specific intent elements of those offenses. And thirdly and finally, that the sentencing court's imposition of a $200,000 fine, which along with an earlier forfeiture of $39,500, resulted in an excessive penalty for the Tatoyans' failure to report a currency export of $80,000 in violation of the excessive fines clause of the Eighth Amendment and the Supreme Court's 1998 Bajikagian ruling. If I may turn, first of all, to the Court's attention with the bulk cash smuggling offense and the instructions given by the Court to the jury as to the elements of those offense. We submit this morning that there were three primary defects in these instructions. The first was that if 5332 must be cross-read with 5322 in the currency code. The reason is, is that 5322 applies to all offenses in the subchapter, and 5332 is codified in the statute, requires a willfulness element in addition to the knowing and intent elements in 5332. Now, it's the government's position in their briefs that no cross-reference back to 5322 is required because 5332, the bulk cash smuggling statute, contains its own penalty provision. There's only one problem with this argument, Your Honors, and that is 5332 does not contain a fine provision. In order to fine the Titoians for this offense, they must cross-reference back to 5322. When they do so, willfulness becomes an element of the offense that was not instructed to the jury. As this Court has ruled in a number of cases, including Judge Hawkins' year 1995 English case and earlier later the Bishop decision in 2002, all of these are consistent with the Supreme Court's Ratzlaff decision, that when Congress imposes a willfulness element, it is not to be read out of the elements of the offense as surplusage. Willfulness is different in character than an intent or knowledge element of a crime. So when the district court failed to properly cross-read 5332 with 5322 and omitted the willfulness element of this offense, it worked material prejudice, obviously, to the defendant's case. A far more serious defect, if that's not enough with the jury instructions, has to do with what we call the temporal nexus or temporal element of 5332. The statute, by the way, is reprinted in the blue brief at page 31. And I feel, I confess to the Court this morning, a bit like return to junior high or elementary school grammar, because this statute, in order to understand the grammar of the statute and consequently the elements of the statute, has to be understood through a series of elements. The statute says that whoever — and here's the first essentially element of the crime — with the intent to evade a currency reporting requirement, and then next, knowingly — so the knowing element is contained along with the intent element — and then the statute goes on to speak to conceals more than $10,000 in currency, and then there are some sub-clauses after that. And these go on for a few lines. And then there's a comma, and then says, and transports the currency. When you break down the statute into its component elements, the statute essentially requires an intent to evade, a knowing state of mind, a concealment, and a transportation. Our submission to the District Court — and this is fully captured not only in the conflicting jury instructions but in a very detailed colloquy before the District Court, before instructions — was that the act of knowing concealment of cash has to be done in causal and temporal We put in plain English, the jury must have found that the Titoians had an intent to evade the reporting requirements at the time of the concealment of the currency. Why is this significant? Because, as this Court is well aware, 50-332 and the reporting offense in 50-316 reaches what is otherwise completely innocent behavior. Taking currency out of the country, indeed concealing currency in an attempt to export it out of the country, is otherwise completely innocent behavior. It is only criminalized if it is done in conjunction with a knowing and willful intent to evade the currency reporting laws. So the textual ambiguity that's raised here is that the District Court found that the intent in knowing elements referred only to the transportation component of the offenses and not the concealment element. And our submission is that, based on all standard linguistic canons, what is known to grammarians and to appeals judges as the rule of the last antecedent — and, in fact, the best decision of this Court on this subject is, again, your decision, Judge Hawkins, in the Northwest Forest Resource Council case — the rule of the last antecedent says very simply that in examining a statute, a qualifying element should be read in terms of the provision that it's closest to. We submit here that, in terms of a proper reading of the statute, that the knowing intent must be formed in relation to the concealment. In fact, we think, based on the grammar, it has to be both in relation to concealment and transportation. The District Court, Judge Hawkins, we would submit that the statute is clear grammatically. It's clear in view of the rule of the last antecedent. If there is any ambiguity — if there is any grievous ambiguity, as the Supreme Court has said, it should be resolved in favor of the tutoyens based on the rule of lenity. Ginsburg. Doesn't that argument depend upon how one considers concealment? Concealment is not just the act of putting it there. Concealment continues as long as you know it's there, even though when you put it there, you had no intent or you had no knowledge that it was going to be — so that unless you're going to say concealment is only the time that you hid it and doesn't cover anything that you then do with where it's hidden, it's just as much concealment at the time you get to the airport as it was when you put it there. It's a continuing condition. We would concur that concealment — and, of course, the government plays great stock on the fact that conceals is in the present and not the past tense, but so is transport. So I think there's an obvious grammatical parallelism that's not otherwise significant for the statutory interpretation here. We would disagree, however, with the conclusion that you suggested, Judge Kennedy. Congress's intent — and I believe this is clear from the official congressional findings for this statute, Congressional Findings 2 and 4 in the statutory text itself — was that Congress expected that violators of the bulk cash smuggling statute would form an intent to willfully violate the statute at the time the smuggler concealed the money and began, initiated the process of transportation. Now, again, whether that in the Titoian's case occurred at home when one is packing one's luggage or at the airport when one checks it with a SkyCab or brings it into the Transportation Security Administration area, I think, at least in the facts of this case, is not relevant. The jury should have been instructed that the intent element that is vital to this offense had to be formed at least at some point in this chain. What Judge Wilson said is it is enough if it's shown at the end of the chain. And I don't believe, according to the congressional findings, that that's what Congress intended in legislating this offense. There is one last defect in the statute, and that is it should be apparent that the are closely allied. The currency reporting offense is at 5316. We acknowledge that there is this additional element of concealment. And in response to your earlier question, Judge Kennedy, the statute in 5332B — 5332A2 provides a definition of concealment. The problem, I suppose, if it is a problem, is that concealment as defined in the statute applies to virtually anyone traveling. I mean, at this moment, Your Honors, I am concealing currency by virtue of the fact that it's in my wallet, in my pocket. I'm not hanging on a pouch underneath your shirt. I'm sorry? But not hanging in a pouch underneath your shirt. No. Those are the facts. Although there were some pouches, although I have to point out that is a very common way, especially here in the United States and Europeans, to carry money when traveling is through a pouch around the neck because it avoids being mugged or having to turn out one's pockets. I don't think there's anything peculiar about that. The point I'm making is that the only thing that distinguishes these two offenses is the act of concealment. Now, in a border search area context, as we understand certainly from this morning, no one is going to be carrying currency in the open in a border situation. So by definition, virtually anyone in the airport at that moment would be concealing currency. Our point is a very modest one in this regard about the possible merger of these two offenses. A very simple corrective instruction was offered to the district court, which was simply that the jury be reminded that a conviction for failure to report was not necessarily the same as a failure or engaging in the criminal conduct of bulk cash smuggling. A very simple instruction. Judge Wilson acknowledged that there was a close interrelation between the two offenses. He acknowledged that the statutory scheme is confusing. We had pointed out that this confusion may carry over reasonably to the jury. A very simple instruction would have alleviated it. It was not given here. I want to save some time to speak about the exclusion of evidence about the source and purpose of funds. The district court ruled that this evidence as to the entirely legitimate source and purpose of the funds was irrelevant and made a Federal Rule of Evidence 402 ruling to that effect. We submit on appeal that such rulings, when they preclude a presentation of a substantive defense, are reviewed de novo. And our submission here is very simple, and that is this Court has ruled that the obverse is true, that a defendant may use motive evidence to negate intent. We believe a reasonable jury, if it had heard the evidence as to the legitimate source and, more importantly, the legitimate purpose of these funds, would have realized the Titoians had no motivation whatsoever to evade the currency reporting requirements. The jury did hear some evidence about the money's ultimate destination, didn't it? It was — well, the evidence that was — Can we start with a yes or a no? I'm sorry, Judge Hawkins, of course. Yes, they did hear some evidence as to the destination of — Going to Mr. Titoian's uncle who needed financial help. They did hear that much. They heard, actually, more directly, Your Honor, that the money was bound for the Middle East, that there were more mentions of the geographic destination of the currency than its intended purpose. There was one mention of that, I believe, in the record. Our submission was that a more sustained consideration could have been made of that. Judge Wilson categorically denied any kind of presentation of evidence as to the legitimate purposes of the funds. Judge Hawkins, you may actually curse me when you think about the record. There was certainly mention of the question of legitimate sources. And really, we take less issue with that because we think it's more probative for the jury to have understood that the purposes, the ultimate purposes of the funds were beneficial. Let me make one last point. And obviously, all that is at stake at this juncture is the fine. The Titoians have served their sentence of community service and their probation. All that's really at issue is whether the fine at this stage was an excessive fine under the Eighth Amendment to the Constitution. As the Court is aware, the defendants had already forfeited half of the confiscated currency that they were transporting that day. The recommended fine by the probation office was $30,000 for both defendants. The sentencing guidelines was $50,000. The statutory maximum was $250,000. The district court imposed a total fine of $200,000. The government submits that if it's within the statutory maximum, that concludes analysis with great respect to their position. That is not what the U.S. Supreme Court said in Bajikajian. Bajikajian stands for the proposition, and this is at page 339 of the Supreme Court opinion, that a statutory fine maximum cannot override the constitutional requirement of proportionality review under the Eighth Amendment. Despite prompting, the district court engaged in no proportionality review at sentencing. At a minimum, according to the Bajikajian decision, proportionality review requires to first of all establish an articulable correlation, that's the Supreme Court's words, not mine, between the fine and the injury suffered by the government. That was not performed here. And secondly, that the defendant's, quote, culpability relative to other potential violators of the reporting provision, close quote, be analyzed as well. And here we have very clearly Congress's intent in legislating the bulk cash smuggling statute. Congressional findings one and three of the statute very clearly articulate that the statute is intended to target those criminal enterprises that are engaged in the movement of currency across borders. The statute refers specifically to drug smugglers. It refers specifically to terrorism, racketeering, tax evasion. Concededly, the government concedes here none of these offenses or criminal enterprises are a question in this case. Bajikajian struck down a fine equivalent to the currency involved. This is a case where the fine was triple the amount at issue in the currency export. So we would just Roberts. Could the district court take into consideration the financial condition of the defendants? Yes. We would understand that fines are by their character punitive, but we would submit that just because the Titoians are high-income individuals and a court may consider that to deter such individuals and punish their conduct, a fine must be excessive, the Bajikajian decision does not essentially waive the rest of the proportionality analysis, what I mentioned before, the correlation between the fine and the injury suffered by the government and the defendant's culpability in relation to other potential violators of the statute. That was not done here at all, Your Honors. I'd like to reserve the last bit of my time for rebuttal. That's with the Court's leave. Thank you for your argument. We have a little over two and a half minutes left. We'll hear from the government at this time. Mr. Hofstadt. Good morning, Your Honors. Brian Hofstadt for the United States. I'd like to start with the same place that the defense started talking about the instruction for the bulk cash statute. In the government's view, and as the district court appeared to agree, this plain language of the statute, as defense counsel stated before, is whoever with the intent to evade the currency requirement knowingly conceals and attempts to transport is the person who violates this statute. The government's view is that the intent to evade provision, that clause, modifies whoever, the very first word in the sentence, and the whoever applies to both of the other elements. So in other words, the person who violates the statute at the time that they conceal and at the time that they transport has to have the requisite intent to evade at both times, and that's basically what the district court's instruction instructed the jury to find. The government believes that this instruction is the instruction that both is indicated by the plain language of the statute and by common sense. So I wanted to respond in kind to each of the defendant's arguments with respect to the additional elements. The defense first argues that there has to be a willfulness element read into the statute by reference to the catch-all penalty provision located in Section 5322A. The government does not believe that that particular provision applies here. While certainly we agree that the bulk cash statute is in the same subchapter, in this case, Congress, when it enacted the bulk cash statute, enacted its own penalty provision that provided for forfeiture, that provided for a five-year statutory maximum. Now, that five-year statutory maximum is the same as in the catch-all provision, but the catch-all provision has an additional sort of recidivist provision as well, that if you can convict a crime under certain circumstances or do it again, it also bumps up the statutory maximum. It seems very unlikely in the government's view that Congress would attempt to incorporate a willfulness element by reference, by cross-reference to a catch-all penalty provision when the statute that actually is being enacted has its own penalty provision. And so the government does not believe that that is what Congress was intending at all. Moreover, to the extent that willfulness is defined as a deliberate and knowing violation of a known duty of law, the bulk cash statute has its own willfulness requirement, insofar as it does require knowledge of the concealment of the money and an intent to evade the intent reporting or the currency reporting requirements. So it does, in itself, incorporate a willfulness requirement, not necessarily the same one by reference to the catch-all provision, but the government doesn't believe that that reference is at all what Congress intended. We'd also like to point out that the defense did not propose any sort of willfulness instruction to the district court. When you look at the proposed instructions in the discussion, that aspect of the request that they're making on appeal was not raised to the district court, which is why we don't have any discussion in the district court's detailed order about that. Now, turning to the main thrust of their argument with respect to the instruction, and I want to pick up on a point that the Court raised earlier, the government's view is that concealment is an ongoing act, that it's not just the time of initial concealment that matters, but the time of ultimate concealment. That is what distinguishes innocent conduct from the conduct that's prohibited by the bulk cash statute. A person has to be transporting and concealing, keeping that money away from others, with the intent to evade. When all three of those things exist at the same time, that's when a violation of the statute occurs. The government believes that there is textual support for this argument, insofar as the word conceal in the statute is in the present tense. It says knowingly conceals. If Congress had intended for the intent to evade to exist only at the time of initial concealment, it could have used the term initial in describing concealment, or it could have made conceal past tense. It could have said whoever with intent concealed and transports, but it didn't choose to do so. Moreover, when you look at the definition of concealment that's contained in the statute in subdivision A-2, it talks about items that are carried or worn, and that putting cash in those places, in backpacks or other areas, is considered concealment. If it only referred to the point of initial concealment, there's no need to talk about carrying or wearing it, because typically when you're shoving money in a backpack or in a pouch, you're not necessarily carrying or wearing it at that time. The government's greatest concern with the defense's temporal argument is that it would largely eviscerate the entire point of Congress enacting this statute. The government agrees that the Detroitians in this case were not bulk drug smugglers or engaged in any sort of the core type of conduct that Congress was trying to get at here. However, the construction that they would urge this Court to adopt would prevent Congress from reaching that type of conduct as to these core targets. And here's why. If it's, in fact, true that you only have to have the intent at the time that you initially conceal the item, any smart drug organization is going to all of a sudden have two groups of people, packers and couriers or travelers. And that way, whoever packs the cash and hides it away has the intent to evade at the time that they are packing it away. But then they hand it off to a courier who has no intent whatsoever with respect to the initial concealment, because they weren't engaged in that concealment. That's the case. They go about their business. They travel. They're immune from prosecution because they didn't have any intent at the time of initial concealment. And the packers are immune because they never transport it. The government believes that this sort of common sense likelihood, if this is a construction that's put upon this statute, would prevent the statute from reaching the core conduct that Congress is aimed at. And for that reason, because of the statutory canon that Congress or that courts are not to construe statutes to lead to absurd results, the government would urge this Court not to adopt the reading that the defense asks the Court to adopt. One other point about their canon of referring to the last antecedent, again, the government believes that it doesn't work with respect to the with intent to evade clause, because that refers to whoever. And in fact, that clause, in fact, the antecedent to that is just the phrase whoever, and that whoever actually goes to the other two elements. Lastly, the government does not believe there's any sort of merger of offenses between this case and the currency reporting case, the currency reporting statute. That's simply because each of them has an element that the other one does not. Under the Blockberger test, that distinguishes it and protects it from any sort of double jeopardy challenge, even if there is a substantial overlap in proof. So the government does not believe that these two offenses will collapse or that the Bolk cash statute is going to reach innocent conduct. Unless the Court has any further questions about the statutory construction issue, I'd like to turn to the motive evidence issue.  I don't see any. Okay. Thank you, Your Honor. With respect to the motive evidence, this Court correctly pointed out that evidence with respect to the ultimate purpose of this money did come into evidence. I think it's an excerpt of Record 134 is where the government elicited through 133 and 134, and the defense argued it again at Excerpt of Record 173 in closing, that the money was destined for the Mr. or Dr. Titoyan's uncle in Iraq. And that it was needed for assistance. So in many respects, the government believes that this issue, in terms of even skipping the merits and going directly to whether there's any sort of harmfulness, this evidence did come in, and as defense stated just a few moments ago, that was the main thrust of what they were concerned about is the purpose of it, not necessarily the source. So that evidence did come in and it was argued. More broadly, though, the government does not believe that there was an abuse of discretion in the district court's initial ruling excluding this evidence. While it is true that there may be some circumstances under which bad motive evidence is relevant to show bad intent. If someone is engaged, as in the Connors case, is engaged in drug trafficking activity, they may more likely have an intent to try to evade the money. The government does not believe that the intent to the having a good motive necessarily defeats any sort of intent or negates it in any sort of way. In this case, good motive, as the Supreme Court has said in the Cheek case, is never a defense to a crime unto itself. And here, none of the elements of any of the offenses that were charged involved good motive either or the purpose or the source of the money as either an element of the offense or as a defense itself. It simply doesn't matter. All that matters is that there was a nonreporting and that there was concealment of transportation with the intent to evade the requirement. 5316, the Currency Reporting Requirements Statute, places no limitations on why the money is being smuggled. And the very facts of this case tend to indicate that having a good motive doesn't necessarily mean you're not trying to evade the currency reporting requirements. In this case, the defendant's, the evidence indicates that the defendant secreted the money in pouches under their, under their sweater or in various pouches outside of their, you know, in Mrs. Titoyen's purses. They had the money broken up so that when they were asked to produce the money, Mrs. Titoyen had a roll that contained exactly $10,000, which was below the limit. Dr. Titoyen had $8,000, which was ready to hand over, which was below the limit. After the inspector told Mrs. Titoyen that she would not be able to miss, to be able to take her flight to Paris that afternoon, she said, well, they told me to write down $10,000 as a spontaneous statement. All of those indicate that the defendants in this case, notwithstanding the fact that they seem to have a good motive for this money, were intending to evade the currency reporting requirement. So the government doesn't believe that this evidence, if it's relevant, is much more than marginally relevant. It certainly doesn't rise to the level of an abuse of discretion. It definitely doesn't rise to the level of a due process violation, as alleged, as well in some of the briefing. Unless the Court has any questions about that issue, I'll turn to the final issue of the fine. Go ahead. Thank you. The fine in this case, the government believes, the district court did not commit plain error with respect to the fine. The government would urge the Court, as I'm sure it already has, to look through the portions of the sentencing transcript and the sentencing papers below. The defense did not raise an Eighth Amendment claim as such. And under this Court's precedent, this Court places a burden on parties to raise a specific constitutional claim if they want to preserve it for de novo review on appeal. And here, that's not what's happened. When looking at the excessive fines issue itself, the Supreme Court in 1998 imposed a requirement under the Eighth Amendment that there be some sort of rough proportionality between the severity of the offense and the fine that's imposed. And in this case, we would submit that the district court attempted to have that sort of rough proportionality. What's important in this case and what distinguishes it from just about every other case that the defense cites is that in this case, there was a conviction of under the bulk cash smuggling statute, a conviction under the currency reporting statute, under the false statement statute, and a conspiracy for all of those charges. Moreover, the advisory guidelines range in this particular case was 21 to 27 months. In nearly every other case cited, the guideline range is zero to six months. And as this Court noted in its MACB decision, one of the factors that the Court looks at in addressing and in assessing the proportionality is the alternative sentences. And in this case, the alternative sentence was much, much higher than in these other offenses. And what the district court did, as the record indicates, is the district court said, I'm not going to impose the 21 to 27 months. I'm going to deviate all the way down to zero months and impose probation. But that I feel there needs to be some sort of deterrent, punitive sentence. The Court said, I don't think incarceration is appropriate, but some sort of punitive fine is appropriate. The district court looked at the PSR in this case, which indicated, again, that the defendants have a fair bit of net worth, and imposed a fine that the district court felt was going to be a deterrent and was in lieu of incarceration. And given the fact that the district court was imposing a sentence that was in lieu of incarceration and was designed to be a deterrent, given the defendant's overall net wealth, as indicated in the PSR, that that decision by the district court was not — that did not impose any sort of fine that was excessive within the meaning of the Eighth Amendment. The maximum guidelines fine in this case was $50,000. So the fine here was twice what the maximum fine was as to each defendant. But in most of the other cases cited by the defense, and where there have been exceptions, the fine was $50,000, and the amount forfeited was 5, 10, 15, 20, 25 times that amount. That's certainly not what we have here. And we don't have the array of various convictions in this case which carry some form of moral culpability that simply cash smuggling does not have. So in light of all that, the government believes that the fine in this case is not excessive, particularly when viewed through the prism of plain error. And unless the Court has any questions about that or the other two issues on appeal, the government will submit. Roberts. Thank you for your argument.  Rebuttal. Your Honors, I'll confine my rebuttal arguments to the bulk cash smuggling and the sentencing questions. As for the bulk cash smuggling issues, Mr. Huffstad suggests that we did not raise this linkage regarding willfulness in 5322 before Judge Wilson. That's not true. If you read the colloquy that occurred in response to the proposed jury instructions at the excerpt of the record from pages 149 to 64, that is mentioned, the possible interplay between those two. I would simply repeat the point I made before, and that is the willfulness element, according to the Supreme Court and Rotsloff, goes to whoever the defendant appreciated their conduct was unlawful. That is what Rotsloff says regarding willfulness. The knowing and intent elements that already exist in 5332 go to different forms of state of mind of the defendant. Essentially what the government is proposing here is the homogenization of these elements which Rotsloff counsels is impermissible. I listen with interest to Mr. Huffstad's argument regarding the suggestion that we're counseling an absurd result for this statute. We do not intend such. We do credit his point that there are situations where you have packers and couriers. Obviously, that's not the situation here. I'm troubled by his suggestion that the statute is properly read to encompass what he refers to as an ultimate concealment. I don't find that notion or concept at all in the statutory language. As I submitted before, even though conceals and transports are in the present tense and even acknowledging your point, Judge Kennedy, that it can be a continuing violation, the government would have it essentially that if concealment is proven at the act of discovery, which is almost logical and necessary that it would be, that the crime is complete. I don't believe that is what Congress intended, and we don't have to speculate about that. The congressional findings are conclusive on that. As for the fine, if I may be very quick, with great respect to the government, the Eighth Amendment issue was raised in colloquy at the sentencing court. Excerpts of record 280, line 22, the district court specifically said he understood that there had been a previous forfeiture. It goes, it is in relation to the amount of the fine. He would be considering that. We asked for further prompting on this proportionality analysis required by coming, and again, I think this is pretty much conclusive under Bajicagian as an excessive fine under these circumstances. And with that, Your Honors, we will submit and wish the Court well for the morning. Thank you. Thank you, both sides, for your argument. You know, sometimes we don't ask a lot of questions because the argument flows very well, and this was an example. I want to thank you both for your arguments and your briefs. The case just argued will be submitted for decision, and the Court will stand adjourned. Thank you.
judges: Kennedy , Hall, Hawkins